**Stephen S. DURISH, Permanent Ancillary Receiver, For Transit Casualty Company, Appellant,**

v.

**Mayo DANCER, Appellee.**

**No. 3–90–190–CV.**

Court of Appeals of Texas, Austin.

Nov. 13, 1991.

Rehearing Overruled Dec. 18, 1991.

Steven R. Welch, Patricia Montgomery, Austin, for appellant.

Laurance L. Priddy, Priddy & Chovanee, P.C., Fort Worth, for appellee.

Before CARROLL, C.J., and JONES and SMITH, JJ.

## ON MOTION FOR REHEARING

SMITH, Justice.

The opinion issued by this Court on June 12, 1991, is withdrawn and the following is substituted.

In this appeal we are required to interpret the Property and Casualty Insurance Guaranty Act, Tex.Ins.Code Ann. art. 21.-28–C (1981 & Supp.1991) ("Guaranty Act"). At issue is: (1) the sufficiency of the evidence supporting the trial court's implied finding that Dancer complied with the "exhaustion of recovery" requirement set out in § 12 of the Act; (2) the proper measurement of a recovery under the Act; and (3) the propriety of an award of post-judgment

interest on a recovery made pursuant to the Act. All of these are issues of first impression in Texas. The district court rendered judgment for Mayo Dancer. We will affirm the judgment.

## BACKGROUND

In 1983, appellee Mayo Dancer sustained several neck and back injuries when a concrete trough, attached to a truck owned by Intercounty Concrete, Inc. ("Intercounty"), struck him and threw him into a trench. These injuries occurred within the course and scope of Dancer's employment with Texas Electric Service Company. Some nineteen months later Dancer filed a notice of injury with his employer's workers' compensation carrier, Texas Employer's Insurance Association ("TEIA"). Although Dancer did not timely file the notice of injury or the workers' compensation claim, TEIA paid him $46,587 in benefits as a matter of policy.

Dancer sued Intercounty for damages for past medical expenses, loss of earning capacity, physical impairment, and past and future pain, suffering and mental anguish. TEIA intervened in the suit in order to pursue its subrogation claim for the workers' compensation benefits paid to Dancer. 1917 Tex.Gen.Laws, ch. 103, § 6a, at 285 [Tex.Rev.Civ.Stat.Ann. art. 8307, § 6a (1967), since repealed]. *See* Tex.Rev.Civ. Stat.Ann. art. 8308–4.05 (Pamph.1991). Transit Casualty Company ("Transit Casualty"), the liability insurance carrier for Intercounty, had been placed in permanent ancillary receivership by the State of Texas in December 1985. Accordingly, Dancer timely filed a proof of claim with the receiver ("Durish") on June 23, 1986. In February 1989, Dancer joined Durish in the suit against Intercounty as a proper party under the Guaranty Act.

In his pleadings, Dancer sought a determination whether, under the terms of the Act, TEIA would be allowed to subrogate its rights to any recovery that Dancer might obtain from the Guaranty Fund.

The parties agreed to address this question, if at all, after a trial on liability and damages.

In November of 1989, Dancer received a favorable jury verdict totalling $165,750. Three months later, the court held a hearing to consider the parties' various motions for judgment. On April 18, 1990, the court awarded Dancer the sum of $165,750, payable from Intercounty. Out of this sum, TEIA was authorized to recover its subrogation interest of $46,587. Because Intercounty's insurance carrier was insolvent, the judgment authorized Dancer to collect from Durish the sum of $100,000, the maximum amount payable under the Guaranty Act for a covered claim. The judgment specifically forbade TEIA from recovering its subrogation interest out of this $100,-000. Finally, the judgment authorized Dancer and TEIA to collect post-judgment interest of 10% per annum, payable on all sums due them.

Approximately three weeks later, TEIA filed a motion to reconsider or modify the judgment. In addition, Durish filed a motion for new trial and motion to modify, correct or reform the judgment. Another hearing was held to allow argument in support of the motions.

In response to Durish's motion to modify, the court withdrew its earlier judgment and substituted its judgment of July 2nd. The new judgment again allowed Dancer to recover $100,000 as a covered claim from the Guaranty Fund but it went on to allow him to pursue the remaining $65,750 as a claim against the insolvent insurance carrier's receivership estate. Further, the judgment specifically directed TEIA to recover its subrogation interest from this $65,750 and not from the $100,000 covered claim payable to Dancer from the Guaranty Fund. The judgment awarded Dancer and TEIA post-judgment interest at a rate of 10% per annum but excluded the collection of any such interest on Dancer's claim against the insolvent carrier's estate. It is from this judgment that the receiver appeals.[1]

---

1. TEIA does not appeal the portion of the trial court's judgment dealing with its subrogation

rights. Therefore, the question of how subroga-

## THE GUARANTY ACT

The Property and Casualty Insurance Guaranty Act establishes a Guaranty Association consisting of all property and casualty insurers licensed to transact the business of insurance in Texas. Guaranty Act, § 14(A) (Supp.1991). The Association maintains a Guaranty Fund by assessing solvent member insurers. A receiver may use the Fund to pay administrative expenses and to help compensate insureds holding covered claims against a member insurer placed in conservatorship or receivership [2] by the Texas Commission of Insurance, when the insurer's assets are insufficient to pay those claims. *Id.* at §§ 2, 5(4) & 14(A) (1981 & Supp.1991).

The Guaranty Act defines a "covered claim" as:

> an unpaid claim of an insured or third party liability claimant which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies, issued ... by an insurer licensed to do business in this State, if such insurer becomes an "impaired insurer" after the effective date of this Act and (a) the third party claimant or liability claimant or insured is a resident of this State at the time of the insured event; or (b) the property from which the claim arises is permanently located in this State.... "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise.

*Id.* at § 5(2) (Supp.1991). The Act limits compensation payable for covered claims to $100,000 except in circumstances not found in this case. *Id.*

Section 12 of the Guaranty Act, "Nonduplication of Recovery," provides:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an impaired insurer, which is also a covered claim, shall be required to exhaust first his right under such policy. The amount of an approved claim under this Act shall be reduced by the policy limits of or amounts paid under such insurance policy, whichever amount is greater.

*Id.* at § 12 (Supp.1991). A party seeking recovery from the Guaranty Fund under a covered claim must first exercise its right of collection, if any, from other insurance policies. If a recovery from another policy is made, any sum payable from the Guaranty Fund is reduced accordingly.

## DISCUSSION

### 1. *The "Exhaustion" Requirement.*

Durish's first three points of error focus on the trial court's interpretation of § 12's "exhaustion" requirement. In these points, Durish complains of the trial court's implied finding that Dancer did, in fact, exhaust the coverage provided by other insurers. The first point asserts that the trial court erred as a matter of law in awarding any judgment against the receiver because Dancer failed to exhaust his rights under available worker's compensation coverage before seeking recovery from the Guaranty Fund. Points two and three complain that the evidence is insufficient to support an implied finding of exhaustion and that the evidence conclusively establishes that Dancer did not exhaust his workers' compensation insurance benefits.

■■■ Durish has not provided this court with a statement of facts from the trial, although statements of fact from two post-trial hearings were filed as part of the appellate record. Nor has he included a statement of points to be relied upon. *See* Tex.R.App.P.Ann. 53(d) (Pamph.1991). In the absence of a statement of facts, it must be presumed that sufficient evidence was introduced to support the findings of the jury and the judgment of the court. *Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557

---

tion interests should be handled under the Guaranty Act is not before this court.

**2.** The Insurance Commissioner may appoint a receiver to take possession of the assets of the insolvent insurer and liquidate the company.

Tex.Ins.Code Ann. art. 21.28 (1981 & Supp. 1991). Transit Casualty is domiciled in Missouri, therefore the Commissioner appointed an ancillary receiver to manage and liquidate the Texas assets.

(Tex.1987). And even where a partial statement of facts is included, we must presume that the omitted material is relevant to the disposition of the appeal. *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex.1990). Without a statement of facts, an appeal on evidentiary matters presents nothing for review. *J–IV Investments v. David Lynn Mach.*, 784 S.W.2d 106, 107 (Tex.App.Dallas 1990, no writ). Accordingly, we overrule Durish's first three points of error.

## 2. *Nonduplication of Recovery.*

Durish's fourth point of error arises from the trial court's interpretation of the Guaranty Act's "nonduplication of recovery" provision. The goal of this particular provision is to ensure that a claimant under the Guaranty Act does not receive a windfall in the form of a duplicate recovery. The pertinent portion of § 12 is its second sentence: "Any amount payable on a covered claim under this Act shall be reduced by the amount of any recovery under such insurance policy." Tex.Ins.Code.Ann. art. 21.28–C § 12 (1981).[3] The "such insurance policy" language refers back to the section's first sentence setting forth the exhaustion requirement. The trial court offset the compensation benefits against the total judgment. Durish argues, however, that this offset should be made against the $100,000 statutory limit on covered claims. His disagreement with the trial court centers around the proper "start point" from which to subtract the compensation award.

Dancer was awarded damages of $165,-750. The court reduced the amount payable on this covered claim by the $46,587 in compensation benefits and ordered the receiver to pay Dancer the statutory maximum of $100,000 from the Guaranty Fund, free from any subrogation rights of the compensation carrier. The court permitted Dancer to assert the balance of his claim for $65,750 against the receivership estate, subject to the subrogation rights of the compensation carrier. Durish argues that the trial court should have subtracted the $46,587 (that Dancer previously collected in benefits) from the $100,000 statutory limit on a covered claim to reduce the Fund's liability from $100,000 to $53,413. No reported Texas decision has addressed the proper measurement of this offset.

Both parties have directed the court's attention to numerous decisions of our sister states which purport to shed light on the arithmetic calculation necessary to avoid any duplication of recovery.[4] We have found those decisions to be insightful but not necessarily dispositive. Most of the decisions acknowledge the statutory goal of non-duplication of recovery, but they fail to arrive at a consistent method to calculate the guaranty fund's liability. Nevertheless, the court has identified an appellate decision which it finds most persuasive and we believe its reasoning best resolves the issue before us today.

In *Sussman v. Ostroff*, 232 N.J.Super. 306, 556 A.2d 1301 (App.Div.), *cert. denied*, 117 N.J. 143, 564 A.2d 865 (1989), the court was asked to resolve a controversy involving an injured employee, a compensation carrier, and the New Jersey Property–Liability Insurance Guaranty Association (the "Guaranty Fund"). At issue was whether the compensation carrier's right to recover monies paid the injured worker was enforceable against the Association, an issue not presented to us today. In holding that the subrogation lien was not enforceable

---

**3.** *Construing* the Texas Property and Casualty Insurance Guaranty Act, 1971 Tex.Gen.Laws, ch. 360, sec. 1, § 12, at 1368, since amended and codified at Tex.Ins.Code Ann. art. 21.28–C § 12 (Supp.1991). This section now reads as follows: "the amount of an approved claim under this Act shall be reduced by the policy limits of or an amount paid under such insurance policy, whichever amount is greater." *Id.*

**4.** These decisions are of greater interest than might otherwise be the case because they interpret statutory language similar to that used in the Texas Guaranty Act. Texas, along with numerous other states, has based its Act upon model legislation proposed by the National Association of Insurance Commissioners. *See* Council of State Governments, *1971 Suggested State Legislation* § 74–64–00, 155–167 (1971); Texas Legislative Council, *Accomplishments of the 62nd Legislature* (Regular And First Called Sessions) 72 (1971). Consequently, the various state guaranty acts are quite similar to each other.

against the Association, the New Jersey court commented at length on the relationship between the Guaranty Fund, a compensation carrier, and an injured worker:

We are therefore convinced that the legislatively mandated interrelationship between the workers' compensation insurer, the Guaranty Fund, and the injured worker is simply this. The injured worker may not obtain a double recovery. If his recovery against the tortfeasor is less than his compensation benefits, the Guaranty Fund is liable for the tortfeasor's defense costs but is excused from indemnification. If the injured worker's recovery against the tortfeasor is greater than his compensation benefits, the Guaranty Fund is obliged to pay only the difference. And the workers' compensation insurer is limited, in asserting its reimbursement lien in either case, to a claim against the insolvent insurer's receiver.

This scheme is subject to ready implementation where the injured worker's claim against the tortfeasor goes to verdict. *In that case, on presentation of appropriate proofs of the amount of the workers' compensation lien, the trial judge can simply deduct the amount of the lien from the verdict and enter judgment in the reduced amount against the tortfeasor, directing it to be paid by the Guaranty Fund, provided however, that it does not exceed either the tortfeasor's policy limit or the Guaranty Fund's maximum liability.*

*Id.* 556 A.2d at 1305–06 (emphasis added). The court finds this reasoning illuminating and applicable to the controversy before us.

■ Mayo Dancer's judgment in the amount of $165,750 exceeded his compensation benefits of $46,587. Using calculations which parallel those proposed in *Sussman,* the trial court subtracted the compensation award from the judgment and ordered the Guaranty Fund to pay the difference ($165,750 − $46,587 = $119,163), subject to the statutory limit of $100,000. As to the compensation carrier's right to subrogation, such recovery was to come in the form of a claim against the receivership estate.

We believe that the trial court's computations effect the nonduplication of recovery provisions set out in § 12, as well as the general recovery scheme set out in the Act itself. We also believe that our interpretation comports with § 4 of the Act requiring a liberal construction: "This Act shall be liberally construed to effect the purpose under Section 2 which shall constitute an aid and guide to interpretation." Section 2 of the Guaranty Act reveals that the aim of the statute is the protection of those parties holding covered claims. The real question is "How much protection?" But for the insurer's insolvency, Dancer would have recovered $119,163 (the amount of his judgment less his compensation benefits). Under the existing statutory scheme, his recovery from the Fund is limited to $100,-000. This is, we think, the protection of the claimant which the statute mandates by its very terms. Durish's contentions cannot be reconciled with the Act's stated goals. We overrule his fourth point of error.

### 3. *Post–Judgment Interest.*

■ In his fifth and final point of error, Durish argues that Tex.Ins.Code Ann. art. 21.28 § 8(d) prohibits the payment of interest on a claim brought against the Guaranty Fund: "Interest shall not accrue on any claim subsequent to the date of the commencement of delinquency proceedings." Durish suggests that by allowing Dancer to recover post-judgment interest, the court has created a liability rejected by the statutory language itself. We have reexamined the Guaranty Act in light of art. 21.28 § 8(d) as well as other existing statutes permitting the payment of such interest. We do not agree with Durish.

Section 8(d) prohibits a receiver from paying pre-judgment interest that otherwise would accrue after the inception of the delinquency proceeding and before the entry of the court's judgment. This section does not prohibit the award of post-judgment interest. Such an award is authorized under Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 2 (Supp.1991), which states

that "all judgments ... of the courts of this state earn interest, compounded annually, at the rate published by the consumer credit commissioner in the Texas Register." Mayo Dancer is a judgment holder; interest will accrue on the judgment absent any contrary statutory provision. The Guaranty Act itself contains no provision which would forbid the payment of such interest. The matter is seemingly resolved.

In the motion for rehearing Durish also relies on language in § 20 stating that the Guaranty Act shall control in the event of a conflict between this Act and other laws.[5] The Guaranty Act is silent as to the payment of post-judgment interest; therefore, it cannot be said to conflict with the statute allowing for the payment of post-judgment interest. Because the Guaranty Act itself contains no provisions to the contrary, we hold that the payment of such interest is proper. Under these circumstances, there is no conflict with any other law. On account of the Guaranty Act's silence, the competing statute will be given its due effect. Durish's fifth point of error is overruled.

## CONCLUSION

The judgment of the trial court is affirmed and the motion for rehearing is overruled.

---

5. Section 20 provides that:

The provisions of this Act and the powers and functions authorized by this Act are to be exercised to the end that its purposes are accomplished. This Act is cumulative of existing laws, but *in the event of conflict between this Act and other law* relating to the subject matter of this Act or its application, the provisions of this Act shall control, except Articles 21.28 and 21.28–A of this code always prevail over the provisions of this Act.

*See* Tex.Ins.Code Ann. art. 21.28–C, § 20 (Supp. 1991) (emphasis added). Durish has failed to *identify any conflict.* Further, the language in § 20 relating to articles 21.28 and 21.28–A contemplates a conflict as between provisions of the Guaranty Act and these respective articles. If and when such a conflict occurs, articles 21.28 and 21.28–A will control. Our facts give rise to no such conflict; instead, a question has arisen asking whether the Texas statute allowing for post-judgment interest applies.