**Richard LATTER,**

v.

**Sandra A. AUTRY, Receiver of American Pacer Insurance Company.**

**No. 3–92–495–CV.**

Court of Appeals of Texas, Austin.

May 12, 1993.

Keith M. Fletcher, Sharon D. Simmons, Simmons & Fletcher, Houston, for appellant.

Amy Jeanne Weaver, Mullen, MacInnes & Redding, Austin, for appellee.

Before POWERS, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

This appeal involves interpretation of the Texas Property and Casualty Insurance Guaranty Act ("the Guaranty Act"),[1] 71st

---

1. Because American Pacer Insurance Company became impaired under the Guaranty Act in October 1990, we must focus on the Guaranty Act as it appeared at that time. *See Durish v.* *Channelview Bank,* 809 S.W.2d 273, 275–77 (Tex.App.—Austin 1991, writ denied). Unless otherwise indicated, all statutory references are to the Guaranty Act as it appeared in October

Leg., R.S., ch. 1082, §§ 6.13–.14, 1989 Tex. Gen. Laws 4370, 4395–4398 (Tex.Ins.Code Ann. art. 21.28–C, §§ 5(2), 7, 12, since amended). We must determine whether an injured party may seek recovery from the guaranty fund when the tortfeasor's insurer is in receivership, even though the party has already received insurance benefits in excess of the tortfeasor's policy limits. This Court addressed a related issue in *Durish v. Dancer*, 819 S.W.2d 258 (Tex. App.—Austin 1991, writ denied), in which we held that, when a plaintiff's suit against the tortfeasor has proceeded to judgment, the guaranty fund's liability is determined by offsetting any subrogation lien from the final judgment rather than from the statutory cap of $100,000; the fund's liability is confined to the tortfeasor's policy limit or $100,000, whichever is less. *Dancer*, however, did not involve the situation presented here of a policy limit *less than* the subrogation lien. Relying on *Dancer*'s policy announcement and liability calculation, we will now hold that, when the insurance benefits a plaintiff has already recovered exceed the limits of the policy issued by the insurance company in receivership, the guaranty fund has no liability. Therefore, we will affirm the trial court's summary judgment.

## BACKGROUND

While selling newspapers for the Houston Post in August 1990, Richard Latter was struck by an automobile driven by Christopher Kingham. Latter suffered multiple injuries requiring immediate and subsequent surgery. Latter continues to experience pain and discomfort as a result of these injuries and will require additional surgery. Latter received $41,529.06 from the Houston Post's workers' compensation

carrier, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), for indemnity and medical expenses incurred.

At the time of the accident, the tortfeasor held a liability policy issued by American Pacer Insurance Company ("American Pacer") limited to $20,000 per person per accident. American Pacer was placed in receivership on October 2, 1990. After being notified of American Pacer's receivership, Latter followed the statutory procedure and timely filed a proof of claim with American Pacer's receiver, Eugene Brodhead.[2] Liberty Mutual failed to timely file a proof of claim for its subrogation rights on benefits paid to Latter. The receiver rejected Latter's claim against the guaranty fund, declaring it invalid because it was actually a subrogation claim by Liberty Mutual. The Guaranty Act specifically excludes an insurance carrier's subrogation claim from the definition of a covered claim. Guaranty Act § 5(2). Latter filed suit against the receiver for judgment that the claim be allowed. Latter appeals the trial court's summary judgment in favor of the receiver on the ground that Latter's claim was not a covered claim for purposes of recovery from the guaranty fund.

## THE GUARANTY ACT

The Guaranty Act establishes an association of all property and casualty insurers licensed to transact business in Texas. Guaranty Act § 7. By assessing contributions from solvent member insurers, the association maintains a guaranty fund which assumes insolvent insurers' obligations with respect to statutorily defined "covered claims,"[3] limited to the lesser of the policy limit or $100,000. *Id.* §§ 5(2), 7.

1990. Although the numbering and organization of the Guaranty Act has since changed, the relevant text interpreted in this opinion remains virtually identical.

2. Brodhead was the original receiver of American Pacer. Sandra Autry, the appellee in this suit, replaced Brodhead while the underlying proceeding was pending.

3. The Guaranty Act defines a covered claim as

an unpaid claim of an insured ... which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies.... Individual "covered claims" shall be limited to One Hundred Thousand Dollars ($100,-000).... "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise.
Guaranty Act § 5(2).

A party seeking recovery from the guaranty fund for a covered claim must first exercise its right of collection, if any, from other insurance carriers not in receivership ("exhaustion requirement"). *Id.* § 12. To prevent double recovery, the Guaranty Act provides that the amount of the injured party's approved claim will be offset by the amount of benefits recovered under another policy ("nonduplication of recovery"). *Id.* All insurers hold an absolute right to subrogation against any money an insured recovers from the tortfeasor, up to the amount of benefits paid ("subrogation lien"). Act of June 8, 1985, 69th Leg., R.S., ch. 326, § 1, 1985 Tex.Gen.Laws 1387 (Tex.Rev.Civ.Stat.Ann. art. 8307, § 6a(a) (since repealed and codified at Tex. Rev.Civ.Stat.Ann. art. 8308–4.05 (West Supp.1993))); *Reliance Ins. Co. v. Kronzer, Abraham & Watkins,* 582 S.W.2d 170, 172 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). As we noted in *Dancer,* a workers' compensation carrier or other insurer may not assert its lien against any sums recovered from the guaranty fund, but may only pursue its claim against the assets of the receivership. 819 S.W.2d at 263.

The questions presented for our review are whether Latter has a "covered claim" against the tortfeasor's impaired insurer, and whether Latter's suit must proceed to a final judgment before the guaranty fund's liability can be determined.

## DISCUSSION

In a single point of error, Latter claims the trial court erred in rendering summary judgment for the receiver because any subrogation interest Liberty Mutual may have does not preclude his own recovery from the guaranty fund, even though the subrogation interest exceeds the tortfeasor's policy limit of $20,000.

We initially address Latter's argument that the receiver failed to prove that Liberty Mutual holds a subrogation lien against any recovery by Latter. We dis-

agree. As noted above, an insurer holds an absolute subrogation right, which matures when the insurer pays benefits on behalf of the insured. *Reliance Ins.,* 582 S.W.2d at 172. The question, then, is not whether Liberty Mutual holds a subrogation lien, but the amount of that lien. Latter's argument that the receiver failed to prove a lien amount of $41,529.06 is insupportable because Latter admitted in response to the receiver's requests for admissions that he had received no less than $41,529.06 in workers' compensation and medical benefits. Any matter so admitted is conclusively established as to the party making the admission, unless the trial court on motion permits withdrawal or amendment of the admission. Tex.R.Civ.P. 169(2). The record indicates neither that Latter moved to withdraw or amend his admission nor that the trial court granted any such motion. Consequently, Latter may not contest the existence or amount of Liberty Mutual's subrogation lien.[4]

Relying on *Dancer,* Latter further argues that, in determining the guaranty fund's liability, the workers' compensation benefits he received from Liberty Mutual should be offset against a final judgment, not against the tortfeasor's policy limit. Latter misreads *Dancer;* the policy underlying that opinion does not require the receiver to await a final damages award against a tortfeasor before determining the guaranty fund's liability when the subrogation lien exceeds the tortfeasor's policy limit.

The Guaranty Act's purpose is to provide the injured party the same recovery he would have received had the responsible insurer remained solvent. *See* Guaranty Act § 12; *Dancer,* 819 S.W.2d at 263. In this case, if American Pacer were solvent, it would be obligated to compensate Latter for his injuries, up to the $20,000 policy limit. Because Liberty Mutual paid Latter's workers' compensation benefits and medical expenses, Liberty Mutual

---

**4.** Both in its brief and at oral argument, the receiver relied on the fact that Liberty Mutual not only held a subrogation lien, but also held an assignment of recovery from Latter. Be-

cause we base our holding on the existence of a subrogation lien in an amount above the tortfeasor's policy limit, we need not determine the effect of any such assignment.

would be entitled to indemnification, first, through any money recovered by Latter, and, second, by suit against the tortfeasor's insurance carrier. *See Dancer*, 819 S.W.2d at 263. Because Liberty Mutual's subrogation lien exceeds $20,000, Latter would not be entitled to any payment from American Pacer.

In the instant situation, the Guaranty Act operates to compensate Latter in the same manner. The guaranty fund is obligated to pay all covered claims up to the $20,000 policy limit. Guaranty Act § 5(2). By definition, when the subrogation lien exceeds the tortfeasor's policy limit, there is no "covered claim" because any amount due the injured party is subrogated to the compensation carrier or other insurer. All amounts due an insurer as a subrogation recovery are specifically excluded from the definition of "covered claim." Guaranty Act § 5(2). Because Liberty Mutual is statutorily entitled to any recovery by Latter against the tortfeasor, in an amount that exceeds the $20,000 policy limit, Latter's claim against the receiver cannot be a covered claim; it is an amount due an insurer as a subrogation recovery. *Id.*

Our determination that Latter has no covered claim is consistent with a Massachusetts decision determining the liability of that state's guaranty fund when the subrogation lien exceeds the tortfeasor's policy limit. *See Ferrari v. Toto*, 417 N.E.2d 427 (Mass.1981). Interpreting a statutory scheme almost identical to the one before us, the *Ferrari* court held that when the compensation carrier's lien exceeds the tortfeasor's policy limit, the injured worker's claim against the guaranty fund is not a "covered claim" within the statutory definition because it is actually an amount due an insurer as a subrogation recovery. *Id.* 417 N.E.2d at 428.

*Dancer* is distinguishable from the present situation because the tortfeasor's policy limit exceeded both the subrogation lien and the statutory cap; hence, the question presented was whether insurance benefits previously received should be offset against the total damages assessed by jury verdict or against the statutory cap. Although the *Dancer* case had proceeded to final judgment, our holding in that cause does not require a determination of actual damages under the present facts. By definition, the guaranty fund's liability will always be limited to the lesser of the tortfeasor's policy limit or the statutory cap. Therefore, when the proven subrogation lien exceeds the tortfeasor's policy limit, the guaranty fund's nonliability is established without awaiting a final judgment or settlement. We overrule Latter's point of error.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.