Latter v. Autry 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-495-CV





RICHARD LATTER,



 APPELLANT


vs.





SANDRA A. AUTRY,


 RECEIVER OF AMERICAN PACER INSURANCE COMPANY,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 91-14791, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 




 This appeal involves interpretation of the Texas Property and Casualty Insurance
Guaranty Act ("the Guaranty Act"), (1) 71st Leg., R.S., ch. 1082, §§ 6.13-.14, 1989 Tex. Gen.
Laws 4370, 4395-4398 (Tex. Ins. Code Ann. art. 21.28-C, §§ 5(2), 7, 12, since amended). We
must determine whether an injured party may seek recovery from the guaranty fund when the
tortfeasor's insurer is in receivership, even though the party has already received insurance
benefits in excess of the tortfeasor's policy limits. This Court addressed a related issue in Durish
v. Dancer, 819 S.W.2d 258 (Tex. App.--Austin 1991, writ denied), in which we held that, when
a plaintiff's suit against the tortfeasor has proceeded to judgment, the guaranty fund's liability is
determined by offsetting any subrogation lien from the final judgment rather than from the
statutory cap of $100,000; the fund's liability is confined to the tortfeasor's policy limit or
$100,000, whichever is less. Dancer, however, did not involve the situation presented here of
a policy limit less than the subrogation lien. Relying on Dancer's policy announcement and
liability calculation, we will now hold that, when the insurance benefits a plaintiff has already
recovered exceed the limits of the policy issued by the insurance company in receivership, the
guaranty fund has no liability. Therefore, we will affirm the trial court's summary judgment.



BACKGROUND


 While selling newspapers for the Houston Post in August 1990, Richard Latter was
struck by an automobile driven by Christopher Kingham. Latter suffered multiple injuries
requiring immediate and subsequent surgery. Latter continues to experience pain and discomfort
as a result of these injuries and will require additional surgery. Latter received $41,529.06 from
the Houston Post's workers' compensation carrier, Liberty Mutual Fire Insurance Company
("Liberty Mutual"), for indemnity and medical expenses incurred.

 At the time of the accident, the tortfeasor held a liability policy issued by American
Pacer Insurance Company ("American Pacer") limited to $20,000 per person per accident. 
American Pacer was placed in receivership on October 2, 1990. After being notified of American
Pacer's receivership, Latter followed the statutory procedure and timely filed a proof of claim
with American Pacer's receiver, Eugene Brodhead. (2) Liberty Mutual failed to timely file a proof
of claim for its subrogation rights on benefits paid to Latter. The receiver rejected Latter's claim
against the guaranty fund, declaring it invalid because it was actually a subrogation claim by
Liberty Mutual. The Guaranty Act specifically excludes an insurance carrier's subrogation claim
from the definition of a covered claim. Guaranty Act § 5(2). Latter filed suit against the receiver
for judgment that the claim be allowed. Latter appeals the trial court's summary judgment in
favor of the receiver on the ground that Latter's claim was not a covered claim for purposes of
recovery from the guaranty fund.



THE GUARANTY ACT


 The Guaranty Act establishes an association of all property and casualty insurers
licensed to transact business in Texas. Guaranty Act § 7. By assessing contributions from solvent
member insurers, the association maintains a guaranty fund which assumes insolvent insurers'
obligations with respect to statutorily defined "covered claims," (3) limited to the lesser of the policy
limit or $100,000. Id. §§ 5(2), 7.

 A party seeking recovery from the guaranty fund for a covered claim must first
exercise its right of collection, if any, from other insurance carriers not in receivership
("exhaustion requirement"). Id. § 12. To prevent double recovery, the Guaranty Act provides
that the amount of the injured party's approved claim will be offset by the amount of benefits
recovered under another policy ("nonduplication of recovery"). Id. All insurers hold an absolute
right to subrogation against any money an insured recovers from the tortfeasor, up to the amount
of benefits paid ("subrogation lien"). Act of June 8, 1985, 69th Leg., R.S., ch. 326, § 1, 1985
Tex. Gen. Laws 1387 (Tex. Rev. Civ. Stat. Ann. art. 8307, § 6a(a) (since repealed and codified
at Tex. Rev. Civ. Stat. Ann. art. 8308-4.05 (West Supp. 1993))); Reliance Ins. Co. v. Kronzer,
Abraham & Watkins, 582 S.W.2d 170, 172 (Tex. Civ. App.--Houston [1st Dist.] 1979, no writ). 
As we noted in Dancer, a workers' compensation carrier or other insurer may not assert its lien
against any sums recovered from the guaranty fund, but may only pursue its claim against the
assets of the receivership. 819 S.W.2d at 263.

 The questions presented for our review are whether Latter has a "covered claim"
against the tortfeasor's impaired insurer, and whether Latter's suit must proceed to a final
judgment before the guaranty fund's liability can be determined.



DISCUSSION


 In a single point of error, Latter claims the trial court erred in rendering summary
judgment for the receiver because any subrogation interest Liberty Mutual may have does not
preclude his own recovery from the guaranty fund, even though the subrogation interest exceeds
the tortfeasor's policy limit of $20,000.

 We initially address Latter's argument that the receiver failed to prove that Liberty
Mutual holds a subrogation lien against any recovery by Latter. We disagree. As noted above,
an insurer holds an absolute subrogation right, which matures when the insurer pays benefits on
behalf of the insured. Reliance Ins., 582 S.W.2d at 172. The question, then, is not whether
Liberty Mutual holds a subrogation lien, but the amount of that lien. Latter's argument that the
receiver failed to prove a lien amount of $41,529.06 is insupportable because Latter admitted in
response to the receiver's requests for admissions that he had received no less than $41,529.06
in workers' compensation and medical benefits. Any matter so admitted is conclusively
established as to the party making the admission, unless the trial court on motion permits
withdrawal or amendment of the admission. Tex. R. Civ. P. 169(2). The record indicates neither
that Latter moved to withdraw or amend his admission nor that the trial court granted any such
motion. Consequently, Latter may not contest the existence or amount of Liberty Mutual's
subrogation lien. (4)

 Relying on Dancer, Latter further argues that, in determining the guaranty fund's
liability, the workers' compensation benefits he received from Liberty Mutual should be offset
against a final judgment, not against the tortfeasor's policy limit. Latter misreads Dancer; the
policy underlying that opinion does not require the receiver to await a final damages award against
a tortfeasor before determining the guaranty fund's liability when the subrogation lien exceeds the
tortfeasor's policy limit. 

 The Guaranty Act's purpose is to provide the injured party the same recovery he
would have received had the responsible insurer remained solvent. See Guaranty Act § 12;
Dancer, 819 S.W.2d at 263. In this case, if American Pacer were solvent, it would be obligated
to compensate Latter for his injuries, up to the $20,000 policy limit. Because Liberty Mutual paid
Latter's workers' compensation benefits and medical expenses, Liberty Mutual would be entitled
to indemnification, first, through any money recovered by Latter, and, second, by suit against the
tortfeasor's insurance carrier. See Dancer, 819 S.W.2d at 263. Because Liberty Mutual's
subrogation lien exceeds $20,000, Latter would not be entitled to any payment from American
Pacer.

 In the instant situation, the Guaranty Act operates to compensate Latter in the same
manner. The guaranty fund is obligated to pay all covered claims up to the $20,000 policy limit. 
Guaranty Act §5(2). By definition, when the subrogation lien exceeds the tortfeasor's policy
limit, there is no "covered claim" because any amount due the injured party is subrogated to the
compensation carrier or other insurer. All amounts due an insurer as a subrogation recovery are
specifically excluded from the definition of "covered claim." Guaranty Act § 5(2). Because
Liberty Mutual is statutorily entitled to any recovery by Latter against the tortfeasor, in an amount
that exceeds the $20,000 policy limit, Latter's claim against the receiver cannot be a covered
claim; it is an amount due an insurer as a subrogation recovery. Id.

 Our determination that Latter has no covered claim is consistent with a
Massachusetts decision determining the liability of that state's guaranty fund when the subrogation
lien exceeds the tortfeasor's policy limit. See Ferrari v. Toto, 417 N.E.2d 427 (Mass. 1981). 
Interpreting a statutory scheme almost identical to the one before us, the Ferrari court held that
when the compensation carrier's lien exceeds the tortfeasor's policy limit, the injured worker's
claim against the guaranty fund is not a "covered claim" within the statutory definition because
it is actually an amount due an insurer as a subrogation recovery. Id. at 428.

 Dancer is distinguishable from the present situation because the tortfeasor's policy
limit exceeded both the subrogation lien and the statutory cap; hence, the question presented was
whether insurance benefits previously received should be offset against the total damages assessed
by jury verdict or against the statutory cap. Although the Dancer case had proceeded to final
judgment, our holding in that cause does not require a determination of actual damages under the
present facts. By definition, the guaranty fund's liability will always be limited to the lesser of
the tortfeasor's policy limit or the statutory cap. Therefore, when the proven subrogation lien
exceeds the tortfeasor's policy limit, the guaranty fund's nonliability is established without
awaiting a final judgment or settlement. We overrule Latter's point of error.



CONCLUSION


 For the foregoing reasons, we affirm the judgment of the trial court.



 

 Bea Ann Smith, Justice

[Before Justices Powers, Kidd and B. A. Smith]

Affirmed

Filed: May 12, 1993

[Publish]
1. [1] Because American Pacer Insurance Company became impaired under the Guaranty Act
in October 1990, we must focus on the Guaranty Act as it appeared at that time. See Durish v.
Channelview Bank, 809 S.W.2d 273, 275-77 (Tex. App.--Austin 1991, writ denied). Unless
otherwise indicated, all statutory references are to the Guaranty Act as it appeared in October
1990. Although the numbering and organization of the Guaranty Act has since changed, the
relevant text interpreted in this opinion remains virtually identical.
2. [2] Brodhead was the original receiver of American Pacer. Sandra Autry, the appellee in
this suit, replaced Brodhead while the underlying proceeding was pending.
3. [3] The Guaranty Act defines a covered claim as


 an unpaid claim of an insured . . . which arises out of and is
within the coverage and not in excess of the applicable limits of
an insurance policy to which this Act applies . . . . Individual
"covered claims" shall be limited to One Hundred Thousand
Dollars ($100,000) . . . . "Covered claim" shall not include any
amount due any reinsurer, insurer, insurance pool or
underwriting association, as subrogation recoveries or otherwise.


Guaranty Act § 5(2).
4. [4] Both in its brief and at oral argument, the receiver relied on the fact that Liberty Mutual
not only held a subrogation lien, but also held an assignment of recovery from Latter. 
Because we base our holding on the existence of a subrogation lien in an amount above the
tortfeasor's policy limit, we need not determine the effect of any such assignment.