**TAYLOR SERVICE COMPANY,**
**Appellant,**

v.

**TEXAS PROPERTY AND CASUALTY**
**INSURANCE GUARANTY**
**ASSOCIATION, Appellee.**

No. 03–95–00417–CV.

Court of Appeals of Texas,
Austin.

March 13, 1996.

Rehearing Overruled April 17, 1996.

From the District Court of Travis County, 345th Judicial District, No. 95–02107; Joseph H. Hart, Judge Presiding.

Ted Mishtal, Clark, Thomas & Winters, Austin, for Appellant.

Paul D. Carmona, John F. Morehead, Morehead Jordan & Carmona P.C., Austin, for Appellee.

Before POWERS, ABOUSSIE and KIDD, JJ.

POWERS, Justice.

Taylor Service Company appeals from a trial-court judgment that it take nothing by its suit for declaratory and ancillary relief against the Texas Property and Casualty Insurance Guaranty Association. We will affirm the judgment.

## THE CONTROVERSY

Taylor purchased from COMCO Insurance Company two liability insurance policies; the first a primary or underlying automobile policy with an aggregate limit of one-million dollars and the second an excess policy limited in a like amount. Each policy was in effect when Taylor became liable to a third party, in the amount of $250,000, following an automobile accident.

Because COMCO had become an impaired insurer, its affairs were administered by the Association. *See* Tex.Ins.Code Ann. art. 21.28–C (West Supp.1996). The Code prohibits the Association to pay more than $100,000 for a claim on a policy written by an insolvent insurer such as COMCO. *See id.* § 5(3). The Association accordingly paid Taylor the $100,000 statutory limit on COMCO's underlying automobile policy. The Association declined, however, to pay any sum under the excess policy. Taylor sued the Association for declaratory and ancillary relief to require payment of an additional $100,-000 under the excess policy. Holding that the claim was not within the coverage of the excess policy, the trial court ordered that Taylor take nothing. Taylor appeals, contending in two points of error that the trial court erred because the excess policy is ambiguous and, properly construed in Taylor's favor, provides coverage and requires payment of the additional $100,000.

## DISCUSSION AND HOLDINGS

The excess policy provides liability coverage for losses Taylor might incur in excess of the "retained limits" specified in each of three primary or underlying liability-insurance policies. The three underlying policies listed in Item 1.6 are as follows: (1) the automobile-liability policy issued by COMCO under which the Association paid the initial $100,000; (2) a commercial general-liability policy also issued by COMCO but not pertaining to the present litigation; and (3) a worker's compensation employers liability policy not involved in the present litigation.

Item 5.16 of the excess policy requires that Taylor maintain in force the three underlying policies and states that Taylor's failure to do so will not enlarge COMCO's liability under the excess policy. Item 5.16 anticipates and provides specifically for an underlying insurer's insolvency, stating as follows:

> Should you be unable to recover from your underlying insurer because of its insolvency ... the coverage afforded by this policy shall apply *in excess of the applicable limit of insurance specified in the schedule of "underlying insurance."*

(emphasis added). The literal sense of this passage in Item 5.16 is that an underlying insurer's insolvency does not enlarge coverage under the excess policy. The threshold of coverage provided by the excess policy remains at the one-million dollar upper limit specified in the underlying automobile-liability policy issued by the insolvent insurer; that is to say, coverage under the excess policy does not "drop down" to encompass Taylor's loss over and above the $100,000 actually paid under the underlying automobile-liability policy.[1]

Taylor argues that we should depart from the literal meaning of the quoted part of Item 5.16. Taylor reasons first that the parties did not intend that the quoted part should apply when the underlying insurance was written by COMCO itself, for it is unreasonable to suppose that COMCO intended to provide against its own insolvency. To sustain this contention requires that we override by implication the express language of the

1. The expression "drop down" is a useful shorthand expression employed by the parties. It describes the result of construing the terms of an excess-liability policy so that it provides coverage beginning at the amount actually collected from an insolvent primary or underlying insurer, as opposed to the higher threshold of coverage stated explicitly in the excess policy. Various provisions in an excess policy may suggest *by implication* that this is the interpretation intended by the parties or one fairly imputed to the excess policy owing to some ambiguity. *See* Jane M. Draper, Annotation, *Primary Insurer's Insolvency as Affecting Excess Insurer's Liability*, 85 A.L.R. 4th 729 (1991). On the other hand, the provisions of excess policies are not all alike and an *express provision* therein may defeat the implication and preclude "questions of the excess insurer being required to drop down when the primary insurer becomes insolvent." *Id.* at 739. Item 5.16 of the excess policy involved in the present appeal is an express provision of that kind.

parties. We may not do so. *National Sec. Life & Casualty Co. v. Davis,* 152 Tex. 316, 257 S.W.2d 943, 945 (1953). Taylor reasons also that the quoted part of Item 5.16 is ambiguous because certain other provisions in the excess policy make a distinction between COMCO and "your underlying insurer" even though the quoted part of Item 5.16 does not. This does not, in our view, render the quoted part of Item 5.16 or the contract as a whole susceptible of two reasonable interpretations on the issue of whether the parties intended that an underlying insurer's insolvency would enlarge the scope of coverage specified in the excess policy.[2]

"The policy must be considered as a whole and effect be given to each part where reasonably possible." *Davis,* 257 S.W.2d at 944. We cannot follow that precept if we adopt Taylor's theory that "the applicable limit of insurance specified in the schedule of 'underlying insurance'" means the reduced sum of $100,000 collected on the underlying policy because of the insurer's insolvency. This is an *unreasonable* meaning to impute to Item 5.16 because it conflicts with and renders meaningless the stated intention of the parties that "the applicable limit of insurance" is that "specified in the schedule" comprising Item 1.6 of the policy and the definition of "underlying insurance" in Item 6.19.[3] The $100,000 is not an applicable limit so specified in the schedule. In the absence of two reasonable interpretations there is no ambiguity and an insurance contract, like any other, should be construed in accordance with ordinary usage. *See Ranger Ins. Co. v. Bowie,* 574 S.W.2d 540, 542 (Tex.1978); *General Am. Indem. Co. v. Pepper,* 161 Tex. 263, 339 S.W.2d 660, 661 (1960).

We hold, therefore, that Item 5.16 is not ambiguous and that the parties intended it to apply in the event of the underlying insurer's insolvency even though COMCO provided both the primary and excess coverage.[4] Under Item 5.16 Taylor would have received nothing from COMCO under the excess policy had the insurer remained solvent. Thus, our holding comports with the ultimate purpose of the Texas Property and Casualty Insurance Guaranty Act[5] which is to "provide the injured party the same recovery he would have received had the responsible insurer remained solvent." *See Latter v. Autry,* 853 S.W.2d 836, 838 (Tex.App.—Austin 1993, no writ).

For the reasons given we overrule Taylor's points of error and affirm the trial-court judgment.

---

**2.** It is abundantly clear that the parties intended that the term "underlying insurer" should include COMCO. Item 6.19 of the excess policy defines the term "underlying insurance" to mean the primary policies listed in Item 1.6, a schedule of underlying insurance policies. In that schedule, COMCO is listed as the issuer or carrier of two of the three underlying policies.

**3.** Taylor's other arguments regarding ambiguity in other provisions of the excess policy are irrelevant when Item 5.16 is read as we understand it.

**4.** Our holding is consistent with decisions in other jurisdictions regarding the "drop-down" question. These decisions indicate the only practical way to avoid a "drop down" obligation in the case of an underlying insurer's insolvency is to specifically contract against such an obligation. *See McGuire v. Davis Truck Serv.,* 518 So.2d 1171, 1174 (La.Ct.App.1988) (finding duty to "drop down," noting excess carrier can rewrite policy to make clear any intent that coverage will not "drop down" in event of insolvency of primary insurer); *Gibson v. Kreihs,* 538 So.2d 1057, 1060 (La.Ct.App.1989) (finding no obligation to "drop down," noting excess policy unquestionably provided coverage does not "drop down" in event of insolvency of underlying insurer); *accord Robichaux v. Randolph,* 563 So.2d 226, 227–28 (La.1990); *Alabama Ins. Guar. Ass'n v. Magic City Trucking Serv.,* 547 So.2d 849, 854 (Ala.1989); *see also supra* note 1.

**5.** Tex.Ins.Code Ann. art. 21.28–C (West Supp. 1996).